Clyde GREEN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 18, 1955.

Rehearing Denied Sept. 16, 1955.

638

Rodes K. Myers, Leland H. Logan, Bowling Green, T. C. Carroll, Shepherdsville, J. T. Hatcher, James R. Applewhite, Elizabethtown, George B. Boston, Bowling Green, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb Stewart, Asst. Atty. Gen., Allen P. Cubbage, Leitchfield, Faurest & Montgomery, Elizabethtown, for appellee.

MOREMEN, Justice.

Appellant, Clyde Green, was indicted for the murder of David Shipp. In a second count of the indictment, he was charged with being a habitual criminal under KRS 431.190, and it was set forth that in the year of 1926 he had been convicted of voluntary manslaughter and had been sentenced to 21 years' confinement in the penitentiary.

At the trial Green was found guilty of voluntary manslaughter and his punishment was fixed at confinement in the penitentiary for 42 years, which period of time was double the amount of the sentence of 21 years fixed by the previous conviction.

The appellant owned a farm in Hardin County and part of this farm adjoined the Dixie Stock Farm of which David Shipp was manager. Prior to the date of the killing, appellant had delivered to Dixie Stock Farm for storage and cleaning various amounts of fescue and other seeds. At about 9:30 on the night of November 11, 1953, appellant visited the home of David Shipp located on the Dixie Stock Farm and there in a sun porch discussed in a friendly manner with Shipp and his wife subjects of general interest to farmers.

The sun porch in which they conversed had formerly been an open porch which was afterwards enclosed by glass. One end of the little room had been partitioned off with plywood and a bathroom installed. After some time had elapsed and Mrs. Shipp had withdrawn to the bathroom in preparation for bed, the altercation arose.

Appellant's version was this: He noticed that Mrs. Shipp was fixing to retire and he said, "David, it looks like a little late, but I thought I would run by here and see if it was right for you to charge for insurance and storage on the seed." Shipp made no reply for about half a minute. He got up, walked behind the desk, reached in a drawer and put something in his right pocket. Appellant assumed that it was a gun. He related that Shipp told him to get out of his office and hit him on the side of the head, and they both went out of the door. Shipp told him that he was going to get more than Lucas Simpson got (Simpson had been beaten up). Appellant testified that this scared him and that his life was in danger, that Shipp put his hand in his pocket and he thought he was getting his gun, and "I pulled my gun and went to shooting, and he turned and went back in the house, and as he turned, I went out and got in my truck and backed out—turned around."

Mrs. Shipp testified: "I heard them talking about the seed, and David Said, 'Now, Mr.—Now, Clyde, we have been over all of this, and you know I don't owe you anything,' and Mr. Green said, 'No,'

but he had to have some money, and David said, 'If you came here for trouble tonight, you can get up and go home,' and I heard them go to the door, and he opened the door for him. That is when Mr. Green said 'Well, this is what I came for,' and David said, 'No, Clyde; that is no way to settle anything. You come back tomorrow when you are in better shape, and we will talk this out,' and immediately he began to shoot." She also testified that for a few seconds after she heard the four shots she was too stunned to do anything, then she came out of the bathroom and found her husband unconscious upon the couch. Her husband was unarmed.

The sheriff of Hardin County, J. A. Nall, testified that when he arrived at Green's home not long after the shooting, he found him in an intoxicated condition. He admitted that he had killed Shipp and said, "He asked for it, and I gave it to him." Harvey Tabb, who at that time was deputy sheriff, was with Nall and he stated that Green added, "No man can owe me that much and get by with it."

■ We have not undertaken to summarize the vast amount of proof taken in this case but we believe the bare statement given above is sufficient to refute appellant's contention (1) that his motion for a peremptory instruction should have been sustained, and (2) that the verdict of the jury as the result of passion and prejudice, was contrary to the evidence.

Appellant urges that the court erred (1) in overruling the demurrer to the indictment; (2) in failing to admit competent evidence offered by appellant; and (3) in giving erroneous instructions to the jury.

■ The first ground is based on the contention that the second count of the indictment should have stated that the offense of voluntary manslaughter is a felony. An examination of this portion of the indictment discloses that it is there alleged that appellant was convicted on a charge of voluntary manslaughter and was sentenced to 21 years in the penitentiary and that subsequent to that conviction, the crime of killing David Shipp was committed. Section 6 of the Criminal Code of Practice provides that "A felony is an offense of which the punishment is death, or confinement in the penitentiary." In the light of that definition we believe the indictment is sufficient.

■ In regard to the second portion of this contention, we believe the allegation in the indictment, which sets out the dates of the indictment, trial and judgment in the year 1926, coupled with the allegation that the killing of David Shipp in 1953 was subsequent to that conviction, is sufficient to meet the requirement that the indictment must charge that the crimes were committed in sequence after conviction for a previous one. Allen v. Commonwealth, 272 Ky. 533, 114 S.W.2d 757; Harrod v. Whaley, Ky., 239 S.W.2d 480.

■ In connection with the second contention, appellant argues that the court erred in refusing to permit Honorable Howard Holbert, a lawyer, to testify concerning the projection and penetration of bullets and other matters concerning firearms and their uses. We think the court properly rejected this testimony because Mr. Holbert failed to qualify as an expert in this field of endeavor.

■ Complaint is also made that testimony was improperly excluded to the effect that the Governor had commuted the original sentence and had restored Green to citizenship and that the jury had the right to take this matter into consideration. However, the Habitual Criminal Statute, KRS 431.190, provides that a person convicted a second time of a felony shall be confined to the penitentiary not less than double the time of the sentence under the first conviction and we do not believe it was anticipated that events subsequent to the sentence should be considered in mitigation. If such were the case, the force of this statute would be impaired. See Herndon v. Commonwealth, 105 Ky. 197, 48 S.W.

989, where this contention was specifically rejected.

■ Finally appellant contends that the instructions were objectionable because the court failed to instruct that a unanimous verdict is required in criminal cases. Perhaps it is better practice to state that fact to the jury, but counsel has the right to request that the jury be polled and determine whether the verdict was in fact unanimous. The record does not disclose whether or not a poll was taken and under such condition we will assume that the verdict was unanimous.

■ Appellant contends that instruction No. 5 was erroneous in that it did not state that the former conviction was a felony. The statute states that the increased penalty should not be given unless the jury finds the fact of a former conviction for felony. The instruction given requires the jury to believe "that he was convicted in the Warren Circuit Court at a special term on June 16, 1926, of the crime of voluntary manslaughter and his punishment fixed at 21 years in the penitentiary and that the crime covered by instruction No. 2 was committed after said conviction." We believe that the instruction is plain and proper under the statute and it was not necessary for the court to add that the crime of manslaughter is a felony.

■ Appellant relies on Allen v. Commonwealth, 277 Ky. 168, 125 S.W.2d 1013 and Coleman v. Commonwealth, 276 Ky. 802, 125 S.W.2d 728, as authority for his contention that instruction No. 5 (which concerns the Habitual Criminal Act) was mandatory in that it directed the jury to return a verdict of 42 years if it found appellant guilty of the voluntary manslaughter of David Shipp. However those cases are controlling authority only in situations where the trial court has instructed as to penalties under the Habitual Criminal Act alone without giving a separate instruction under which a penalty could be imposed for the crime for which the defendant was then being tried. In other words, the only penalty that could be imposed, in those cases, was under the Habitual Criminal Act. Under the instructions in the case at bar, the jury was not so limited and was at liberty to convict under either the Habitual Criminal Act instruction or the other instructions pertaining to the crime of murder and its lesser degrees; if, of course, they favored conviction.

We have found no error in this record and the judgment is therefore affirmed.